IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : CHAPTER 13 |
| KIYA CARMICHAEL | : |
| DEBTOR(S) | : BANKRUPTCY NO. 10-10943  SR |
| | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE OF AMERIQUEST MORTGAGE SECURITIES, INC., ASSET BACKED PASS THROUGH CERTIFICATES, SERIES 2005-R5 UNDER THE POOLING AND SERVICING AGREEMENT DATE AS OF JUNE 1, 2005, WITHOUT RECOURSE | : |
| PLAINTIFF(S) | : |
| VS. | : |
| DAMION CARMICHAEL AND KIYA CARMICHAEL | : |
| DEFENDANT(S) | : ADVS. NO. 10-193 |

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

Before the Court is Plaintiff Deutsche Bank's Motion for Summary Judgment. It is opposed by the Defendants who are the debtors in this bankruptcy case. Briefs were submitted. The Court next took the motion under advisement. For the reasons which follow, the Motion for Summary Judgment will be granted.

*Procedural Background*

This matter began in state court where Deutsche filed a Complaint in Mortgage Foreclosure. A default judgment was entered and then opened. Debtors filed an

Answer and New Matter to which Plaintiffs filed a reply. The New Matter consists of an affirmative defense which makes up the thrust of their opposition

*Bankruptcy Filing*
*and Removal*

Before the state court ruled on the summary judgment motion, Debtors filed bankruptcy and removed the matter to this court. The parties have filed supplemental briefs but, for the most part, the record is as it was before the state court of Common Pleas.[1]

*Standard for Summary Judgment*

Motions for summary judgment are governed by Rule 1035.1 *et seq*. of the Pennsylvania Rules of Civil Procedure ("Pa..R.Civ.P."). Rule 1035.2 states that

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury

Pa.R.C.P. 1035.2. Where such a motion is opposed, Rule 1035.3 provides, in pertinent

---

[1] Neither party contends that a mortgage foreclosure proceeding is within this Court's core jurisdiction. Notwithstanding, Deutsche has filed a statement pursuant to Bankruptcy Rule 9027(e)(3) agreeing to the entry of a final order in this non-core matter.

part:

>  (a) Except as provided in subdivision (e), the adverse party
>  may not rest upon the mere allegations or denials of the
>  pleadings but must file a response within thirty days after
>  service of the motion identifying
>
>  (1) one or more issues of fact arising from evidence in the
>  record controverting the evidence cited in support of the
>  motion or from a challenge to the credibility of one or more
>  witnesses testifying in support of the motion, or
>
>  (2) evidence in the record establishing the facts essential to
>  the cause of action or defense which the motion cites as not
>  having been produced.

Pa.R.C.P. 1035.3. Both the motion and any response may be supported by affidavits of persons competent to testify thereon. Pa.R.C.P. 1035.4. In sum, where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. The court will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Evans v. Sodexho,* 946 A.2d 733, 737-738 (Pa.Super.2008), *quoting Murphy v. Duquesne Univ. of the Holy Ghost,* 565 Pa. 571, 777 A.2d 418, 429 (Pa.2001) (internal citations and quotation marks omitted).

*Summary Judgment in*
*Mortgage Foreclosure*

The Court turns first to what is required for a movant to be entitled to summary judgment in mortgage foreclosure.  Entry of summary judgment is appropriate in a mortgage foreclosure action where mortgagors "admit that the mortgage is in default, that they have failed to pay interest on the obligation, and that the recorded mortgage is in the specified amount." *Cunningham v. McWilliams*, 714 A.2d 1054, 1057 (Pa. Super. 1998) (citing *Landau v. Western Pennsylvania National Bank*, 445 Pa. 217, 225-26, 282 A.2d 335, 340 (1971)).  Additionally, averments in a responsive pleading are deemed admitted when not denied specifically or by necessary implication.  Pa.R.C.P. 1029(b); *see also Cercone v. Cercone*, 254 Pa. Super. 381, 387, 386 A.2d 1, 3 (1978) (finding defendant was required to specifically deny factual allegations in complaint where defendant is in position to know truth or falsity of allegation). A general denial or demand for proof will be deemed an admission.  *Id*.  More specifically, in a mortgage foreclosure action, the mortgagors, aside from the mortgagee or assignee, are the only parties with sufficient knowledge to base a specific denial.  *New York Guardian Mort. Corp v. Deitzel*, 362 Pa. Super. 426, 429, 524 A.2d 952.

Attached in support of Deutsche's Motion is the Affidavit of Kathy Sath [?][2], Vice President and Assistant Secretary of CitiResidential Lending, as Attorney in Fact for the movant.  The affiant states from personal knowledge that the mortgage is held by Deutsche pursuant to a Pooling and Services Agreement dated June 1, 2005 (Affidavit,

---

[2]Nowhere is this affiant's name typed out; only a signature appears at the end of the document.  Therefore, the Court does its best in reciting what it believes to be the affiant's last name.

4

¶ 4);[3] that the underlying loan is in default because no monthly payments of interest or principal have been made since March 1, 2007 *(Id.*, ¶ 5); and that Defendants were consequently given the requisite notice of Deutsche's intention to foreclose under Pennsylvania law (the Act 91 Notice) *(Id.*, ¶ 6). How do they Defendants respond?

Originally, the Defendants had challenged Deutsche standing to foreclose, but they subsequently withdrew that challenge. *See* Brief in support of Cross-Motion, 11; Debtors' Supplemental Brief, 3. Here they offer no evidence that disputes any of the foregoing. Instead, they question the affiant's competence to testify. They explain that she is employed by CitiResidential Lending as opposed to either AMC or Deutsche. What the Court observes, however, is that the CitiResidential is described as *attorney in fact*. In other words, CitiResidential is acting on behalf of Deutsche. *See PXRE Corp v. Terra Nova Ins. Co. Ltd*, 76 Fed.Appx. 485, 492 (3d Cir.2003)("The American and English Encyclopedia of Law (2d Ed.) vol. 3, p. 281, defines an attorney in fact as "any private or special agent appointed for some particular or definite purpose not connected with a proceeding at law, by formal authority, called a letter or power of attorney, in which is expressed the particular act or acts for which he is appointed and the extent of his authority.") But more to the point, Defendants have already admitted in their Answer the crucial facts upon which the affiant would testify: i.e., that, indeed, they have not made a mortgage payment since March 1, 2007. *See* Answer, ¶ 5. As for evidence of their own, the Defendants offer only the Affidavit of their counsel, Mr. Eyre. That

---

[3]The recording of that mortgage did not occur until 3 months after the foreclosure complaint was filed. Defendants initially objected to Deutsche's status as a real party in interest to foreclose but has since withdrawn that argument based on controlling Pennsylvania law. *See* Defendants' Supplemental Brief, 3.

affidavit does no more than recite the basis for their affirmative defense, *infra*, that Deutsche cannot claim to be a holder in due course. It is to that defense to which the Court now turns.

*Debtors' Affirmative
Defense in Context*

Defendants contend that at the loan's inception, AMC induced them to sign the mortgage note with fraudulent representations. Although Deutsche was not the original lender who made the loan, Debtors go on, they may raise their fraud claim against Deutsche's foreclosure complaint.

Were it framed as a counterclaim, such a claim would not be allowed in this context. A defendant in a mortgage foreclosure action can only raise counterclaims which arise from the same transaction or occurrence from which the plaintiff's action arose. *See* Pa.R.C.P. 1148. That rule, however governs only counterclaims in mortgage foreclosure action and *does not* apply to new matter. *See First Wisconsin Trust Co. v. Strausser*, 653 A.2d 688, 692-693,439 Pa.Super. 192, 200-201 (Pa.Super.1995).

*Deutsche's Response*

Deutsche does not dispute the Defendant' claim of fraud with regard to certain representations that the original lender, Ameriquest, may have made. Deutsche's position is that it was not aware of such claims when it purchased the loan from Ameriquest. As a result, Deutsche maintains that it is a holder in due course immune from the Debtors' fraud claims.

6

*The FTC Holder Rule*

As a threshold matter, the Defendants assert that Deutsche is precluded from raising defenses under applicable federal regulations. They refer here to the FTC Holder Rule:

> In connection with any sale or lease of goods or services to consumers, in or affecting commerce as "commerce" is defined in the Federal Trade Commission Act, it is an unfair or deceptive act or practice within the meaning of section 5 of that Act for a seller, directly or indirectly, to:
>
> a. Take or receive a consumer credit contract which fails to contain the following provision in at least ten points, bold face, type:
>
> NOTICE
>
> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.
>
> or,
>
> b. Accept, as full or partial payment for such sale or lease, the proceeds of any purchase money loan (as purchase money loan is defined herein), unless any consumer credit contract made in connection with such purchase money loan contains the following provision in at least ten point, bold face, type:
>
> [same as above].

16 C.F.R. § 433.2 (2005). However, the FTC Holder Rule, by its terms, does not apply to mortgage loans for the purchase of real estate, as in this case. *See* 41 F.R. 20024 (Friday, May 14, 1976) (excluding purchases of real estate from affected transaction);

*see also In re Woodsbey*, 375 B.R. 145, 149-150 (Bankr.W.D.Pa.2007) citing *Kaliner v. MERS (In re Reagoso)*, 2007 WL 1655376 at *6 (Bankr.E.D.Pa., June 6, 2007) *citing Johnson v. Long Beach Mortg. Loan Trust 2001-4,* 451 F.Supp.2d 16, 55 (D.D.C.2006). Therefore, Defendants may not rely on that rule in attempting to assert set-offs or recoupment as against Deutsche Bank for the claims they have against the original lender. It will be state law which determines what defenses the Defendants may raise as to Deutsche's foreclosure rights.

*Holder in Due Course*
*Under Pennsylvania Law*

Pennsylvania law does recognize that a holder of commercial paper may raise a defense of good faith. Deutsche asserts innocence as to any claims of fraud which the Debtor would have against the original lender, here, AMC. As a holder in due course, Deutsche declares, it is not vicariously liable for its predecessor's torts. A determination of whether Deutsche has established such status follows.

*Mortgage Loan as*
*Negotiable Instrument*

The threshold requirement for holder in due course (HDC) status is that the party asserting that defense be a holder of a negotiable instrument. Thus, the first element for the present analysis is whether what Deutsche holds is a negotiable instrument. A negotiable instrument is defined as

> [ ] an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

8

> (2) is payable on demand or at a definite time; and
>
> (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain:
>
> (i) an undertaking or power to give, maintain or protect collateral to secure payment;
>
> (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral; or
>
> (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

13 P.S. § 3104(a). Defendants say that a mortgage cannot be a negotiable instrument. Defendants' Brief, 7. However, it is not a mortgage which Deutsche holds, but a promissory note. The mortgage serves to secure that note. Under Pennsylvania law, a promissory note accompanied by a mortgage may be a negotiable instrument. *Mellon Bank, N.A. v. Ternisky*, 999 F.2d 791, 796 (4th Cir.1993) (applying Pennsylvania law to hold that mortgagee was holder in due course)

*Is Deutsche a*
*Holder in Due Course?*

Having determined that the note is a negotiable instrument, the Court turns to whether the record demonstrates that Deutsche acquired the note in good faith (i.e., in due course). The circumstances which indicate innocence are as follows:

> (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and
>
> (2) the holder took the instrument:

9

> (i) for value;
>
> (ii) in good faith;
>
> (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series;
>
> (iv) without notice that the instrument contains an unauthorized signature or has been altered;
>
> (v) without notice of any claim to the instrument described in section 3306 (relating to claims to an instrument); and
>
> (vi) without notice that any party has a defense or claim in recoupment described in section 3305(a) (relating to defenses and claims in recoupment).

13 P.S. § 3302(a).

There is no allegation of forgery or alteration (subsection (a)(1)). Likewise, the PSA demonstrates that Deutsche took the loan for value and in good faith (subsection (a)(2)(i), (ii)).  Defendants contend that Deutsche's innocence is in question when considering ¶ 2(iii) above.  By the time of the assignment, they explain, the loan was already nine months in default.  Defendants' Brief in Opposition to Summary Judgment, 3.  Deutsche contests that premise arguing that the assignment occurred at least two years earlier.  What does the record show?

*Debtors' Defaults/*
*Deutsche's Knowledge*

In April 2005, the mortgage loan in question was made by Ameriquest Mortgage Company (AMC) to the Defendants.  This much is admitted. *See* Answer to Foreclosure Complaint, ¶ 3.  To demonstrate *when Deutsche* obtained the loan, Deutsche offers the

Affidavit of Ronaldo R. Reyes, V.P. According to Mr. Reyes, AMC, Ameriquest Mortgage Services (AMS), and Deutsche entered into a Pooling and Services Agreement (PSA) on June 1, 2005. Reyes Affidavit, ¶ 7. Pursuant to the PSA, AMC sold the Debtors' loan to AMS which immediately conveyed the loan to Deutsche. *Id.*, ¶¶ 11-17. Along with the loan, the PSA provided that AMS would also deliver to Deutsche "an original Assignment assigned in blank" as well as any "original recorded intervening assignment or complete chain of assignment from the original to the person assigning the mortgage to Deutsche." *Id.*, ¶ 13 quoting PSA, § 2.01(iii), (iv).[4] Although the Assignment from AMC to Deutsche would not be *recorded* until 3 months after Deutsche filed this foreclosure complaint, the PSA had already conveyed the Debtors' mortgage loan from AMC to AMS and then on to Deutsche *2½ years earlier*. For that reason, the Court finds that Deutsche took the loan well before it ever went into default. Accordingly, the Court finds Deutsche to have been a holder in due course.

*Defenses to*
*HDC Status*

Yet even a holder in due course is susceptible to certain prescribed defenses of an obligor/borrower. Section 3305 provides, in pertinent part:

> (b) **Right of holder in due course to enforce obligation**.--
> The right of a holder in due course to enforce the obligation of a party to pay the instrument is *subject to* defenses of the obligor stated in *subsection (a)(1)*, *but is not subject to* defenses of the obligor stated in *subsection (a)(2) or* claims in recoupment stated in *subsection (a)(3)* against a person other than the holder.

---

[4] Although the Reyes Affidavit did not attach a copy of the PSA, the Defendants' Cross-Motion does. *See* Cross-Motion, Ex. 2. It contains the quoted provision.

11

13 P.S. § 3305(b) (emphasis added).  The defenses stated in subsection (a)(1) are:

>(1) a defense of the obligor based on:
>
>(i) infancy of the obligor to the extent it is a defense to a simple contract;
>
>(ii) duress, lack of legal capacity or illegality of the transaction which, under other law, nullifies the obligation of the obligor;
>
>(iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms; or
>
>(iv) discharge of the obligor in insolvency proceedings;

13 P.S. § 3305(a)(1).  Which of those defenses, if any, might apply?

As it turns out, none.  There is no claim of infancy, duress or other lack of legal capacity.  Neither is there raised a discharge of the obligation.  That leaves the fraud defense in subparagraph (iii).  This provision *does not* include fraud in all its forms: it draws a distinction between certain types of fraud-based defenses.  Subsection (a)(1)(iii) thus preserves as against the HDC on the claim of fraud that is alleged to have occurred in the execution of the instrument, i.e, fraud in factum.  Therefore, it precludes other frauds such as a fraudulent inducement to enter into the transaction. *See In re Balko*, 348 B.R. 684, 698 n. 18 (Bankr.W.D.Pa.2006) (explaining that fraud in the inducement is not a real defense to a holder in due course); *Exchange Intern. Leasing Corp. v. Consolidated Bus. Forms Co.*, Inc., 462 F.Supp. 626, 628 (W.D.Pa. 1978) ("Under Pennsylvania only fraud in the factum as opposed to fraud in the inducement, is a defense to a holder in due course"); *Equitable Discount v. Fischer*, 12 Pa. D. & C.2d 326, 329-330 (1957); *Catasauqua Nat. Bank v. Miller*, 60 Pa. Super. 220,

1915 WL 4398 at *3 (Pa.Super.) ("The great fabric of commercial business in this country rests largely upon the proposition, long recognized and everywhere accepted, that a negotiable note is 'a courier without luggage,' and that innocent holders for value, who take such paper in due course of business, are not to be bound or affected by any secret equities between the maker of such paper and the payee named."); *Termisky, supra*, 999 F.2d at 796 (applying Pennsylvania law to hold that where bank held mortgage in due course purchaser could not raise defense of fraud in the inducement); *cf Mellon Bank, N.A. v. Pasqualis-Politi*, 800 F.Supp.1297, 1302 (W.D.Pa.1992) (holding that fraud in the inducement could not be asserted a defense of recoupment against judgment of mortgage foreclosure, where fraudulent inducement was not part of or incident to creation of mortgage). As it turns out, the fraud claim which the Defendants would impute to Deutsche consists of a claim of fraudulent inducement. They maintain that they were fraudulently persuaded to refinance their mortgage loan based on representations that if it would be beneficial for them to refinance, then they would later be permitted to refinance notwithstanding the existence of a prepayment penalty in the note. Simply put, these claims may not be raised as to Deutsche, but they are in no way barred as to AMC, the original lender.

*UTPCPL*

In addition to the fraud in the inducement claim, Defendants raise the affirmative defense of state consumer protection law, the Unfair Trade Practices and Consumer Protection Law[5] (New Matter, ¶¶ 71 to 74). The UTPCPL protects consumer against

---

[5] 73 P.S. § 201-1 *et seq*.

13

unfair or deceptive practices[6] and is thus akin to the fraud in the inducement claims discussed, *supra*. Indeed, the Defendants' claim even used the predicate "induced" to explain how they were allegedly lured into the mortgage with AMC in the first place. *See* ¶ 72. Accordingly, they would likewise be subject to the holder in due course defense. *See also In re Reagoso*, *supra* at *6 *citing State Street Bank & Trust Co. v. Strawser*, 908 F.Supp. 249, 252 (M.D.Pa.1995)

*Breach of Contract*

Additionally, Defendants construe the same facts which support their fraud in the inducement claims as a breach of contract (New Matter, ¶¶ 75 to 80). They are referring here to certain alleged promises made by an AMC representative with regard to the note's prepayment penalty. Defendants maintain that AMC assured them that in the event that they needed to refinance the note, then such prepayment penalty would be waived. In other words, the original parties to the loan contract (i.e, AMC and the Defendants) orally modified one of its terms and that AMC breached that oral argument. Defendants argue that such breach should be enforced against Deutsche. Is such a claim likewise barred against an HDC?

It is. To repeat, § 3305(b) specifically provides that "[t]he right of a holder in due to enforce the obligation of a party to pay the instrument is ... not subject to the defenses of the obligor stated in subsection (a)(2) ..." 13 P.S. § 3305(b). The defenses of subsection (a)(2) are:

> a defense of the obligor stated in another section of this

---

[6]73 P.S. § 201-3.

> division[7] or a defense that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract

13 P.S. § 3305(a)(2). The Comment to subsection (a)(2) explains:

> Subsection (a)(2) states other defenses that, pursuant to subsection (b), are cut off by a holder in due course. These defenses comprise those specifically stated in Article 3 and those based on common law contract principles. Article 3 defenses are nonissuance of the instrument, conditional issuance, and issuance for a special purpose (Section 3-105(b)); failure to countersign a traveler's check (Section 3-106(c)); *modification of the obligation by a separate agreement (Section 3-117)*; payment that violates a restrictive indorsement (Section 3-206(f)); instruments issued without consideration or for which promised performance has not been given (Section 3-303(b)), and breach of warranty when a draft is accepted (Section 3-417(b)).

*Milton v. Wilshire Credit Corporation (In re Milton)*, 2005 WL 6508305 at **10-11 (Bankr.E.D.Pa., July 26, 2005) quoting 13 P.S. § 3305 Uniform Commercial Code-Comment 1990 (emphasis added). The subsection renders the HDC immune from breach of contract claims. Any promise or agreement by AMC to waive the prepayment penalty which it later would not honor is just such a claim. As such, it may not be raised as a defense to Deutsche's enforcement of the note. In sum, none of the causes of action raised in Defendants' New Matter are viable as to Deutsche.

*Miscellaneous Defenses*

Lastly, Defendants also raise a series of other defenses and challenges in their New Matter. They question the reasonableness of the itemized attorney's fee in the

---

[7]This refers to Division 3. Negotiable Instruments, of Title 13, Commercial Code of Purdon's Pennsylvania Statutes and Consolidated Statutes.

Complaint, the assessment of late charges, and raise other common law defenses (e.g., estoppel, unclean hands (equity) and lack of consideration.) *See* New Matter, ¶¶ 81-86. A defendant has the burden of proof as to new matter. *See Speight v. Mahalis*, 8 Pa. D. & C. 5th 49, 58, 2008 WL 6581343 (May 28, 2008, Pa.Com.Pl.) These Defendants have offered no evidence or authority in support of these specified defenses.[8]

*Summary*

Based on the evidence offered by Deutsche and the lack of any contrary evidence from Defendants, Deutsche is entitled to a judgment in mortgage foreclosure. Nothing in the Court's ruling, however, constitutes an adjudication on the merits of Defendants' fraud claim against Ameriquest Mortgage Company.

---

[8]With regard to the claim of excessive attorney's fees, the Court observed that Deutsche correctly sets forth the law of the Commonwealth of Pennsylvania on the point: *See* 15 Pa.Prac. § 4:9 (observing that an attorney's fee provision in a mortgage must be reasonable); *see also Warden v. Zanella*, 283 Pa.Super. 137, 140, 423 A.2d 1026, 1028 (1980) (same); *Eastgate Enterprises, Inc. v. Bank & Trust Co. of Old York Road*, 236 Pa.Super. 503, 504, 345 A.2d 279, 280 (1975) (same). An attorney's fee of 5% has consistently been held to be fair and reasonable. *See, e.g., First Federal Savings & Loan Ass'n v. Street Road Shopping Center, Inc.*, 68 Pa. D. & C. 2d 751, 756 (Bucks County, 1975) (citing cases); *see also Phila. Accep. Corp. v. Krapf*, 35 Pa. D. & C. 3d 101, 105 (1984) (finding that in a mortgage foreclosure action, an attorney's fee in the amount of *ten* percent of original principal borrowed due on a mortgage is a reasonable commission where the attorney has to prepare and file a complaint, respond to new matter, engage in routine discovery and attend a one-half day trial).

An appropriate Order follows.

By the Court:

*Stephen Raslavich*

Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: February 1, 2011